UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
INDIRA KAIRAM, M.D.,

                Plaintiff,

-against-

WEST SIDE GI, LLC,

                Defendant.

18 Civ. 1005 (AT) (SDA)

**ORDER**

ANALISA TORRES, District Judge:

    Plaintiff, Indira Kairam, M.D., brings this action raising a variety of federal and state claims arising from a contract dispute between her and Defendant, West Side GI, LLC ("WSGI"), an ambulatory surgery center. ECF No. 1. On February 28, 2018, Plaintiff filed an amended complaint, ECF No. 4, and on May 24, 2018, Plaintiff filed a second amended complaint ("SAC"), ECF No. 22. On June 14, 2018, Defendant moved to dismiss the SAC for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 34, and on October 5, 2018, the Court referred the matter to the Honorable Stewart D. Aaron, ECF No. 77. Before the Court is the Report and Recommendation ("R&R") of Judge Aaron, which recommends that the motion to dismiss be granted and that leave to amend be denied as futile. ECF No. 82. Plaintiff filed timely objections to the R&R. Pl. Objs., ECF No. 89. For the reasons stated below, the Court ADOPTS the R&R in its entirety.

**DISCUSSION**[1]

I.     Standard of Review

    A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When a party makes

---

[1] The Court presumes familiarity with the facts and procedural history, as set forth in the R&R, and, therefore, does not summarize them here. *See* R&R at 1–5.

specific objections, the court reviews *de novo* those portions of the report and recommendation to which objection is made. *Id.*; Fed. R. Civ. P. 72(b)(3). However, "when a party makes only conclusory or general objections, or simply reiterates his original arguments," the court reviews the report and recommendation strictly for clear error. *Wallace v. Superintendent of Clinton Corr. Facility*, No. 13 Civ. 3989, 2014 WL 2854631, at *1 (S.D.N.Y. June 20, 2014); *see also Bailey v. U.S. Citizenship & Immigration Serv.*, No. 13 Civ. 1064, 2014 WL 2855041, at *1 (S.D.N.Y. June 20, 2014) ("[O]bjections that are not clearly aimed at particular findings in the [report and recommendation] do not trigger *de novo* review."). In addition, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Razzoli v. Fed. Bureau of Prisons*, No. 12 Civ. 3774, 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). The court may adopt those portions of the report and recommendation to which no objection is made "as long as no clear error is apparent from the face of the record." *Oquendo v. Colvin*, No. 12 Civ. 4527, 2014 WL 4160222, at *2 (S.D.N.Y. Aug. 19, 2014) (internal quotation marks and citation omitted).

II. Plaintiff's Objections

    A. EPA Claim

The R&R recommends dismissal of Plaintiff's claim under the Equal Pay Act ("EPA") because (1) Plaintiff fails to allege any disparity in pay and (2) Plaintiff does not "adequately allege[] that she and [her comparator] performed equal work in a job requiring equal skill, effort and responsibility." R&R at 6–9. Plaintiff objects to these findings, arguing first that Judge Aaron "improperly discredits Plaintiff's factual allegations" that "the male comparator was paid more than Plaintiff." Pl. Objs. at 7. This is not so. Judge Aaron credits the following allegations made by Plaintiff: (1) Plaintiff "was offered employment with WSGI . . . for which she would be compensated $100,00 per year," (2) Plaintiff's alleged comparator Dr. Distler "was paid a salary of $100,00 per

2

year," and (3) "[Defendant] set the salary for both positions at the same amount." R&R at 6–7 (citing SAC ¶¶ 22–26, 28). Based on these allegations, Judge Aaron concluded that "while [Plaintiff] may have other avenues of legal recourse to recover the money she alleges that she is owed, her allegations are insufficient to state a claim under the EPA." *Id.* at 8. The Court agrees.

The EPA is violated "when an employer pays lower wages to an employee of one gender than to substantially equivalent employees of the opposite gender in similar circumstances." *Pollis v. New Sch. for Soc. Research*, 132 F.3d 115, 118 (2d Cir. 1997). Plaintiff does not allege that WSGI paid her lower wages than it paid Distler—only that WSGI offered her "employment . . . at the rate of $100,000/year" and that she "never received her salary." SAC ¶¶ 23–24. In essence, Plaintiff alleges a breach of contract claim—and not a cognizable claim under the EPA—as she claims that she never received her bargained-for salary.[2] *See, e.g.*, *Malinowski v. Wall St. Source, Inc.*, No. 09 Civ. 9592, 2012 WL 279450, at *3 (S.D.N.Y. Jan. 31, 2012) (adjudicating plaintiff's breach of contract claim based on defendant's "failure to pay him bonuses and salary to which he was entitled under his employment agreement").

Nor does the Court agree with Plaintiff that Judge Aaron "strains to distinguish the Supreme Court precedent set in *Corning Glass Works v. Brennan*, 417 U.S. 188 (1974)." Pl. Objs. at 9. Plaintiff argues that *Corning* establishes that a company's promise to pay the same rate to men and women, and subsequent failure to pay these wages, is actionable under the EPA. *Id.* *Corning*, however, assessed whether "paying a higher base wage to male night shift inspectors than [] to female inspectors performing the same tasks on the day shift, where the higher wage was paid in addition to a separate night shift differential paid to all employees for night work," violated the EPA. 417 U.S. at

---

[2] Nor is Plaintiff correct that the R&R "seeks to improperly place [the] burden on Plaintiff" of "an acceptable reason for the pay differential." Pl. Objs. at 8. "To establish a prima facie case under the EPA, a plaintiff has the burden of showing that the employer paid different wages to employees of opposite sexes." *Victory v. Hewlett-Packard Co.*, 34 F. Supp. 2d 809, 825 (E.D.N.Y. 1999). Here, Plaintiff has not satisfied her burden.

3

190. In *Corning*, a company paid higher wages to employees who previously had worked on the night shift that had not been open to women, which the Court found "perpetuate[d] the effects of the company's prior illegal practice of paying women less than men for equal work." *Id.* at 209–10. The R&R, therefore, correctly distinguished this case, noting that in *Corning* "the company did not promise to pay equal wages and then simply not pay its female workers, nor were the wages nominally equal." R&R at 7 (citing *Corning*, 417 U.S. at 209–10).

The Court also rejects Plaintiff's argument that "the R&R['s construal of the EPA] undermines the purpose Congress sought to achieve." Pl. Objs. at 10. The EPA is intended to equalize pay disparity and counteract the "outmoded societal view that a man should be paid more than a woman for the same work." *Belfi v. Prendergast*, 191 F.3d 129, 135 (2d Cir. 1999); *see also Corning*, 417 U.S. at 195 (noting that Congress enacted the EPA to remedy "the wage structure [in America] that a man, because of his role in society, should be paid more than a woman"). Here, Plaintiff concedes that she and Distler were paid pursuant to the same contract terms, *see* SAC ¶¶ 22–25; Pl. Opp. at 10, ECF No. 46, which forecloses her EPA claim, *see Eng v. City of N.Y.*, 715 F. App'x 49, 51 (2d Cir. 2017) (summary order) ("To prove a violation of the EPA, a plaintiff must first establish [that] . . . the employer pays different wages to employees of the opposite sex . . . .").[3]

The R&R also determined that "even if [Plaintiff] could establish that she was paid a different wage, she has not adequately alleged that she and Dr. Distler performed equal work in a job requiring equal skill, effort and responsibility, and that their two jobs were performed under similar working conditions." R&R at 8. Plaintiff appears to object to this finding, arguing generally that "Plaintiff properly alleged that the male comparator was paid more than Plaintiff for equal work." Pl. Objs. at 10. This objection is too vague and conclusory to trigger *de novo* review and the Court finds no clear

---

[3] Plaintiff contends that "the EPA cause of action arises from the failure to actually pay the wages at the same rate," but cites no caselaw for this proposition. Pl. Objs. at 9.

error with Judge Aaron's determination. *See McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009) ("[O]bjections must be specific and clearly aimed at particular findings in the magistrate judge's proposal." (internal citation and quotation marks omitted)).

Accordingly, the Court agrees with Judge Aaron that Plaintiff fails to allege a pay disparity or that she and Distler performed equal work, and, therefore, Plaintiff's objection is OVERRULED.

### B. ADEA Claim

Next, Plaintiff objects to Judge Aaron's determination that she does not have a viable claim under the Age Discrimination in Employment Act ("ADEA") because (1) WSGI did not implement a mandatory retirement policy and (2) the claim is not ripe because Plaintiff was sixty-seven years old when she filed this action and, therefore, "has not been affected by the mandatory retirement policy." R&R at 12–13. Plaintiff objects to the second finding, arguing both that plaintiffs who challenge illegal mandatory retirement have ripe claims before they reach the retirement age and that she is presently affected by the retirement policy, even though she is not seventy years old. Pl. Objs. at 11–12.

At the outset, the Court notes that this objection is premised on an erroneous assumption—the existence of a mandatory retirement policy. Plaintiff's ADEA claim is based on WSGI's implementation of a policy that required mandatory retirement for members at the age of seventy. SAC ¶¶ 30–32. As Judge Aaron correctly held, however, Plaintiff has not sufficiently alleged that a mandatory retirement policy was actually implemented. R&R at 12–13. Without a policy in place, Plaintiff cannot properly allege an ADEA claim.[4]

---

[4] In a footnote, Plaintiff contends that "the R&R improperly seeks to argue with Plaintiff's well-pleaded facts that WSGI instituted the policy." Pl. Objs. at 11 n.4. Although a court must "accept the allegations contained in the complaint as true," *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994), courts must still determine whether a claim is plausibly alleged on a Rule 12(b)(6) motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The SAC pleads only that "the WSGI Board . . . had *voted* to institute a policy that required mandatory retirement for members . . . at the age of 70," SAC ¶ 30 (emphasis added), but not that the policy was made effective. As Judge Aaron noted, under the applicable Operating Agreement (attached in partial form to the SAC), any amendment requires "an instrument in writing executed by a Super-majority of the Board." R&R at 13 (quoting the Operating Agreement § 12.8, ECF No. 48-1). Because the

Moreover, Plaintiff's objection is not rooted in caselaw. She claims that "[t]he R&R utterly fails to look at cases which state the harm to a[n] employee who is faced with an entirely illegal mandatory retirement plan," but does not direct the Court to any cases in this Circuit. Pl. Objs. at 12. Nor can the Court find any. It is well-settled law that "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotation marks and citation omitted). Plaintiff was sixty-seven when she filed this action and, therefore, has not been affected by an alleged mandatory retirement policy for members at the age of seventy. Plaintiff's speculative "belie[f that] she would be forced to retire at age 70," SAC ¶ 32, is insufficient to state a present claim. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (plaintiff must plead "factual allegations sufficient to raise a right to relief above the speculative level" (internal quotation marks and citation omitted)). The Court, therefore, agrees with Judge Aaron that Plaintiff's claim is not ripe for review because she has not been affected by an alleged mandatory retirement policy.

Plaintiff's next argues that her claim is ripe because, even though she is not yet seventy, she "is affected now by WSGI's illegal mandatory retirement policy." Pl. Objs. at 13. This too fails. Plaintiff offers seven theories of recovery that she claims are not "contingent on any future events" because her "compensation and the terms and conditions of employment have already changed." *Id.* at 14–15.[5] All of these theories, however, are purely speculative because Plaintiff "has not chosen to

---

SAC does not allege the execution of any written instrument, Judge Aaron correctly determined that Plaintiff failed to plead that a policy had been implemented. Plaintiff, therefore, does not sufficiently allege the implementation of a mandatory retirement policy.

[5] Specifically, Plaintiff argues (1) "she can never earn as much under the illegal policy as she could under the previous, legal policy;" (2) "she had purchased the right to work for as long as she wanted" and that "any diminution in that time period changed the present value of the shares;" (3) "the shares are devalued when the illegal activity begins, not when the retirement takes place;" (4) the policy "creates an incentive to not pay any market valuation" for her shares, which have appreciated; (5) "the employer targeted older employees in an ongoing attempt to force them out of the company and steal the increase in the value of their shares;" (6) the retirement policy "was enacted without giving the older doctors enough time to use" the succession option in the Operating Agreement; and (7) she should "not have to leave her employment for a declaratory judgment that the policy is illegal." Pl. Objs. at 14–15.

leave WSGI, nor sold her shares or her practice." R&R at 14. *See, e.g., Bova v. City of Medford*, 564 F.3d 1093, 1096–97 (9th Cir. 2009) (no subject matter jurisdiction where "alleged injury—denial of health insurance coverage—ha[d] not yet occurred" because plaintiffs had not retired, and the city had not actually denied benefits); *cf. Carrier v. Bradley*, No. 10 Civ. 5044, 2011 WL 13175961, at *6 (S.D.N.Y. Sept. 30, 2011) (dismissing claim about whether retired employees are covered by a collective bargaining agreement as not ripe where "it is unclear when Plaintiffs will retire, and what [agreement] will be in effect at the time of their retirement"). Plaintiff, therefore, has not presented a "real and substantial controversy admitting of specific relief." R&R at 13 (citing *Auerbach v. Bd. of Educ. of the Harborfields Cent. Sch. Dist. of Greenlawn*, 136 F.3d 104, 108 (2d Cir. 1998)).[6]

The Court, therefore, agrees with Judge Aaron that Plaintiff has not alleged the implementation of a mandatory retirement policy, and that in any event, her claims are not ripe. Accordingly, Plaintiff's objection is OVERRULED.

C. Title VII Claim

Judge Aaron recommends dismissal of Plaintiff's Title VII claim because she (1) "failed to plead any evidence of discriminatory intent" and (2) "does not adequately allege that she has suffered an adverse employment action." R&R at 14, 16. As to the first finding, Plaintiff argues that she properly pleaded discriminatory intent by alleging that Distler refused to assign cases to her because she "didn't look like the white male colleague to whom he assigned the cases" and that the WSGI Board "ratified his action" by failing to take corrective action. Pl. Objs. at 16. In support of this

---

[6] In attempting to distinguish *Auerbach*, Plaintiff argues that it "deals with an entirely different part of the ADEA, which addresses legal incentive plans which entice workers to retire" and, therefore, that "[i]t is not applicable to illegal mandatory retirement plans." Pl. Objs. at 12. Although the plaintiffs in *Auerbach* sued under a different provision of the ADEA, the Second Circuit's discussion of ripeness is not cabined to this provision. Indeed, the analysis is directly applicable here, as the *Auerbach* Court noted that the injury alleged by plaintiffs "was entirely speculative" because "[w]hen this action was initiated, these teachers had not retired" and "the factual event forming the basis of the claim, i.e., their retirement, had not occurred at the commencement of the action." *Auerbach*, 136 F.3d at 109. The same is true here, as Plaintiff "may decide to leave WSGI for any number of reasons between now and when she turns seventy, or she may be allowed to remain a member of WSGI despite any retirement plan that may otherwise exist." R&R at 13–14.

7

objection, Plaintiff merely repeats the arguments she presented to Judge Aaron, which do not give rise to *de novo* review. *See* Pl. Opp. at 16, ECF No. 46 ("Dr Distler . . . [commented] that he was not referring cases to [Plaintiff] because she did not 'look like' the white, male doctor whose practice WSGI had purchased. Plaintiff cannot allege that any other Board Member ever corrected or contradicted Dr. Distler."). The Court, therefore, reviews this portion of the R&R for clear error and finds none. Judge Aaron's finding that Plaintiff "has not shown even minimal support for the proposition that WSGI was motivated by discriminatory intent," R&R at 15–16, is well-reasoned and grounded in fact and law.

Plaintiff next objects to Judge Aaron's finding that she failed to allege that she has suffered an adverse employment action. Pl. Objs. at 16. Plaintiff claims that Distler stated that he did not refer any cases from the Gould practice to Plaintiff because the male doctor to whom he did refer cases to was a white male who "looks like" Dr. Gould and that "the patients want to see a doctor that 'looks like' Dr. Gould." Pl. Objs. at 17–18. This does not allege an adverse employment action. To constitute an adverse employment action in the context of a discrimination claim, an action must cause "a materially adverse change in the terms and conditions of employment." *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (internal quotation marks and emphasis omitted).

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities. Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (citation omitted). The Court agrees with Judge Aaron that Plaintiff's allegations are insufficient to allege a materially adverse change. Plaintiff does not allege, for example, "how many of Dr. Gould's patients were treated by other WSGI doctors, or if the volume of patients that [Plaintiff] treated overall was lower than the number of patients treated by other WSGI doctors as a result of the lost referrals," nor does she allege "that the loss of referrals impacted her compensation." R&R at 16.

8

*See also Martin v. Dupont Flooring Sys., Inc.*, No. 301 Civ. 2189, 2004 WL 1171208, at *3 (D. Conn. May 25, 2004) (finding no adverse employment action with plaintiff's supervisor's effort to obtain all sales referrals because there was no evidence that "such behavior damaged [plaintiff's] earning potential"). Moreover, as Defendant points out, Plaintiff "still works at WSGI, and she admitted that she was paid in accordance with her membership interest, not the number of cases she received." Def. Opp. at 7, ECF No. 92.[7] The Court, therefore, agrees with Judge Aaron that Plaintiff has not plausibly alleged an adverse employment action.

Accordingly, Plaintiff's objection is OVERRULED.

D. DTSA Claim

Next, Judge Aaron recommends dismissal of Plaintiff's claim pursuant to the Defend Trade Secrets Act ("DTSA") because (1) Plaintiff "has not adequately alleged that her billing template is a trade secret" and (2) Plaintiff, in any event, "has not alleged that it was misappropriated by WSGI." R&R at 17–18. Plaintiff objects only to the second finding, arguing that "Plaintiff has alleged that WSGI acquired the trade secret by misrepresentation." Pl. Objs. at 19. The Court disagrees.

Plaintiff claims that she "provided WSGI with a template she had developed with an outside [Revenue Cycle Management] start-up for her practice to optimize billing." SAC ¶ 24. This assertion is insufficient to allege that WSGI acquired Plaintiff's trade secret by improper means[8] or unconsented disclosure, as required by the DTSA. *See Tesla Wall Sys., LLC v. Related Cos., L.P.*,

---

[7] The Court also agrees with Defendant that, to the extent that Plaintiff now argues that there was an adverse employment action in the form of lost facility fees as a result of WSGI's failure to refer cases to her from the Gould practice, *see* Pl. Objs. at 17–18, this argument is not in line with her pleadings. The SAC alleges lost facility fees during a "transition period" that started in September of 2014 and lasted approximately four to six months. SAC ¶ 17–19. WSGI, however, did not buy the Gould practice until "Autumn 2016," *id.* ¶ 25, well beyond the time period for which she is alleging lost fees.

[8] "Improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means," but "does not include reverse engineering, independent derivation, or any other lawful means of acquisition." 18 U.S.C. § 1839(6).

9

No. 17 Civ. 5966, 2017 WL 6507110, at *10 (S.D.N.Y. Dec. 18, 2017) ("'Misappropriation' is defined within DTSA as an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure, knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty." (citation omitted)); *see also* 18 U.S.C. § 1839(5). Indeed, Plaintiff admits that she "provided WSGI with a template." SAC ¶ 24. *See Medicrea USA, Inc. v. K2M Spine, Inc.*, No. 17 Civ. 8677, 2018 WL 3407702, at *12 (S.D.N.Y. Feb. 7, 2018) (holding that a surgical technique is not a trade secret where the doctor "shared the surgical technique freely and publicly"). The Court agrees with Judge Aaron that this admission defeats any claim that WSGI acquired the template by improper means, as required by the DTSA. R&R at 19. *See* 18 U.S.C. § 1839(6); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 511 n.5 (S.D.N.Y. 2017) (noting that plaintiff cannot establish a likelihood of success in its DTSA claim without evidence that "defendants improperly acquired the purported trade secrets" where defendants "were [plaintiff's] customers when they first acquired the relevant information"). Plaintiff attempts to circumvent this fact, arguing that she alleges that she "never received her salary for this work," SAC ¶ 24, which establishes that "WSGI acquired the trade secret by misrepresentation," Pl. Objs. at 19. The Court rejects this argument, however, because the fact that Plaintiff "never received her salary for this work" establishes a breach of contract claim and not a trade secrets violation.

In any event, the Court agrees with Judge Aaron that—as a fundamental defect—Plaintiff does not establish that her "template" is a protectable trade secret. R&R at 17–18. Plaintiff does not allege any steps she took to protect this "secret;" that the template was, for example, password-protected, stored in a secure location, or only accessed by a limited number of users and subject to a non-disclosure agreement. *See* 28 U.S.C. § 1839(3)(A) (limiting a trade secret to where "the owner

10

thereof has taken reasonable measures to keep such information secret"); *see also Medicrea USA*, 2018 WL 3407702, at *12 (noting that a surgical technique "fail[ed] to acquire trade secret protection because it is not a secret"). Plaintiff also does not allege that she told WSGI that her "techniques" or "template" were confidential. The Court finds, therefore, that Plaintiff did not take reasonable steps to protect her template. *Compare Oneida Grp. Inc. v. Steelite Int'l U.S.A. Inc.*, No. 17 Civ. 0957, 2017 WL 6459464, at *7 (E.D.N.Y. Dec. 15, 2017) (holding that plaintiff took reasonable steps to protect its trade secret when third parties were required to execute nondisclosure agreements and employees were asked to do the same), *with R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 276 (6th Cir. 2010) (finding that a product's user interface was not a trade secret because plaintiff failed to take reasonable steps to maintain its secrecy by failing to bind users to effective confidentiality agreements).

Because Plaintiff has failed to allege that her billing template is a trade secret, and that it was misappropriated by WSGI, her objection is OVERRULED.

E. Supplemental Jurisdiction

After determining that Plaintiff's federal claims should be dismissed, Judge Aaron recommended that the Court decline "supplemental jurisdiction over any state law claims pled by Plaintiff" because "judicial economy, convenience, fairness or comity would not be served by the Court's exercise of supplemental jurisdiction." R&R at 20. Plaintiff objects, arguing that (1) there is still a remaining federal retaliation claim which Defendant did not move to dismiss and which is still before the Court, and (2) Judge Aaron erred in not analyzing certain factors before declining to exercise supplemental jurisdiction. Pl. Objs. at 19–21. Plaintiff's objections are without merit.

First, the Court agrees with Defendant that the SAC does not allege a federal retaliation claim. The SAC makes three references to "retaliatory acts" under its claims pursuant to the ADEA, Title VII, and the EPA, SAC ¶¶ 44, 47, 50, but these passing references fail to allege an instance of

11

retaliation. It does not matter, therefore, that "Defendant never moved to dismiss[]" this claim, or that it was "not briefed and not considered in the R&R." Pl. Objs. at 19–20. Defendant could not have requested dismissal of a claim that was never alleged. Second, although district courts must "evaluate . . . the familiar factors of judicial economy, convenience, fairness, and comity" when determining whether to maintain supplemental jurisdiction under 28 U.S.C. § 1367(c), *Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 81 (2d Cir. 2018), this does not require courts to extensively analyze these factors in their opinions.[9] It is well-settled in this Circuit that once district courts dismiss all of a plaintiff's federal claims, they are "entitled to decline to exercise supplemental jurisdiction over her state-law claims." *Hill v. DLJ Mortg. Capital, Inc.*, 689 F. App'x 97, 99 (2d Cir. 2017); *see also Kolari v. New York–Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006).

As the Second Circuit has directed, "district courts can, *and indeed should*, decline to exercise supplemental jurisdiction when the federal claims are eliminated in the early stages of the litigation." *Smulley v. Fed. Hous. Fin. Agency*, No. 17-2666, 2018 WL 4849667, at *4 (2d Cir. Oct. 5, 2018) (summary order) (internal quotation marks and citation omitted) (emphasis added). The Court does not agree with Plaintiff that supplemental jurisdiction is appropriate here because the Court "did not stay discovery during the pendency of the motion" and because the case "has already been in the Court and well into discov[ery] for nearly a year." Pl. Objs. at 21. This case was filed less than one year ago and it is still in the pretrial stage. "When federal claims are dismissed early in the litigation—for example, before trial on a summary judgment motion—dismissal of state law claim[s] . . . is appropriate." *Cobbs v. CBS Broadcasting Inc.*, No. 97 Civ. 8284, 1999 WL 244099, at *8 (S.D.N.Y. April 26, 1999). Judge Aaron recommended that the Court "decline to exercise

---

[9] Indeed, Judge Aaron did consider these factors, stating that "judicial economy, convenience, fairness or comity would not be served by the Court's exercise of supplemental jurisdiction over any state law claims pled by Plaintiff." R&R at 20.

12

supplemental jurisdiction" over any state law claims. R&R at 20. The Court agrees, and Plaintiff's objection is OVERRULED.

F. Leave to Amend

Finally, Plaintiff argues that the R&R applied the wrong legal standard to assess futility in recommending that leave to amend be denied. Pl. Objs. at 21–22. Judge Aaron held that leave to amend should be denied because he saw no indication "that any of Plaintiff's federal claims are viable." R&R at 20–21 (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)). Plaintiff contends that this conclusion was "legal error" because the Second Circuit's more recent holding in *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, *LLC*, 797 F.3d 160, 191 (2d Cir. 2015), controls. Pl. Objs. at 2. In *Loreley*, the Second Circuit reversed the lower court's denial of leave to amend because the court improperly "presented [the plaintiffs] with a Hobson's choice: agree to cure deficiencies not yet fully briefed and decided or forfeit the opportunity to replead." *Id.* at 190. The Second Circuit held that "the *procedure* by which the district court denied leave to amend was improper" but expressly "le[ft] unaltered the grounds on which denial of leave to amend has long been held proper, such as undue delay, bad faith, dilatory motive, and *futility*." *Id.* (emphasis added). *Loreley*'s holding, therefore, is not as broad as Plaintiff would have it.

Cases following *Loreley* have confirmed this, declining to grant leave to amend when amendment would be futile. *See, e.g.*, *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 47 (2d Cir. 2016) (affirming district court's denial of leave to amend and noting that "a court need not grant such leave if the proposed amendment would still not state a claim, so that the amendment would be futile"); *Lopez v. Ctpartners Exec. Search Inc.*, 173 F. Supp. 3d 12, 43–44 (S.D.N.Y. 2016) (denying leave to amend where plaintiff had been "given multiple opportunities to replead" and amendment would be futile because the deficiencies were "substantive"). Plaintiff has already amended her complaint twice. *See* ECF Nos. 4, 22. *Loreley* does not require the Court to grant leave to file a third

13

amended complaint, and Judge Aaron committed no "legal error" in so holding. The Court, therefore, reviews this portion of the R&R strictly for clear error, and finds none.[10] As stated in the R&R and as discussed above, none of "Plaintiff's federal claims are viable" and as such, amendment would be futile.[11] R&R at 20–21. Accordingly, Plaintiff's objection is OVERRULED.

## CONCLUSION

The Court has reviewed *de novo* those portions of the R&R to which Plaintiff properly objects and has reviewed the remainder of the R&R for clear error.[12] For the reasons stated above, the Court ADOPTS the R&R in its entirety. Defendant's motion is dismiss is GRANTED as to Plaintiff's federal claims. Because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, those claims are DISMISSED without prejudice to renewal in state court. Additionally, Plaintiff's request for leave to amend is DENIED as futile.

Having granted Defendant's motion to dismiss, Plaintiff's motion for a preliminary injunction is DENIED as moot.

---

[10] Although some district courts within this Circuit have suggested that a motion for leave to amend may be dispositive when denied, *see Schiller v. City of New York*, No. 04 Civ. 7922, 2009 WL 497580, at *2 (S.D.N.Y. Feb. 27, 2009), the weight of authority appears to be that such motions are non-dispositive regardless of the outcome. *See, e.g.*, *Wilson v. City of New York*, No. 06 Civ. 229, 2008 WL 1909212, at *3 (E.D.N.Y. Apr. 30, 2008) (collecting cases); *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 91 (S.D.N.Y. 2002). Indeed, the Second Circuit has described a motion to amend as non-dispositive more than once. *See, e.g.*, *Fielding v. Tollaksen*, 510 F.3d 175, 178 (2d Cir. 2007); *Kilcullen v. N.Y. State Dep't of Transp.*, 55 F. App'x 583, 584 (2d Cir. 2003). The Court, therefore, reviews for clear error Judge Aaron's denial of Plaintiff's request to amend. *See Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010).

[11] As Judge Aaron explained, "nothing contained in Plaintiff's Opposition Memorandum or articulated by Plaintiff's counsel during the lengthy oral argument indicates to the Court that any of Plaintiff's federal claims are viable." R&R at 20–21. Therefore, it does not matter that Plaintiff did not have the benefit of the Court's ruling when it amended its complaint twice, because Plaintiff cannot cure the deficiencies noted here and in the R&R. *See, e.g.*, *Bartlett v. Honeywell Int'l Inc.*, 737 F. App'x 543, 551–52 (2d Cir. May 25, 2018) (summary order) (affirming district court's denial of leave to amend where plaintiffs failed to submit a proposed amended pleading or otherwise indicate how they could cure the pleading's deficiencies).

[12] To the extent not discussed above, the Court finds the unchallenged portions of the R&R to be free of clear error.

The Clerk of Court is directed to terminate the motions at ECF Nos. 34 and 39, and to close the case.

SO ORDERED.

Dated: January 31, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge