RYAN SESTACK
RSESTACK@GRSM.COM

JEFFREY CAMHI
JCAMHI@GRSM.COM

LINDSEY BLACKWELL
LBLACKWELL@GRSM.COM

COPATRICK THOMAS
CXTHOMAS@GRSM.COM



ATTORNEYS AT LAW
ONE BATTERY PARK PLAZA
28TH FLOOR
NEW YORK, NY 10004
PHONE: (212) 269-5500
FAX: (212) 269-5505
WWW.GRSM.COM

February 10, 2023

**VIA ECF**

Honorable Stewart D. Aaron
United States Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

      **Re:** *Kairam v. Westside GI, LLC*
            **Docket Number 1:18-cv-1005 (AT) (SDA)**

Dear Judge Aaron:

      This firm represents Defendants Westside GI, LLC ("WSGI" or "Westside GI") and Drs. Peter Distler and Ricardo Pou (collectively, the "Defendants") in the above-referenced action. We write pursuant to the Order of the Court dated February 8, 2023 (ECF No. 294), which directed Defendants to take various actions in connection with the parties' discovery disputes and to submit a status letter to the Court. In addition, we wish to bring to the Court's attention various misrepresentations made by opposing counsel in her February 7, 2023 letter to the Court, which we believe are a sufficient basis for a Rule 11 motion.

**PRELIMINARY MATTERS**

      Pursuant to the Court's February 8, 2023 Order, we have now conferred with Dr. Distler, who advised that the email address previously identified by opposing counsel (peterdistler6@gmail.com) is only occasionally used for WSGI business, if at all, and is used for personal matters entirely unrelated to WSGI or the allegations asserted in the Second Amended Consolidated Complaint ("SACC"). Accordingly, we do not believe that a search and review of the email account would be appropriate or proportional to the needs of this case, particularly given that Defendants have already collected all communications from Dr. Distler's primary business account.

Nevertheless, we offer to conduct a manual search of Dr. Distler's email, and will review and produce any relevant, non-privileged communications that are located.

In addition, after conferring with our clients, to the best of their information and belief, counsel representing WSGI in connection with Dr. Goldberg's retirement/separation may be served at the following address:

> Garfunkel Wild, P.C.
> Attn: Andrew E. Blustein, Esq.
> 111 Great Neck Road
> Suite 600
> Great Neck, New York 11021

## THE COURT SHOULD NOT DIRECT DEFENDANTS TO UTILIZE THE SEARCH TERMS PROPOSED BY PLAINTIFF

A copy of Plaintiff's proposed search terms and the related hit report is attached hereto as **Exhibit A**.[1] A copy of Defendants' proposed search terms and the related hit report is attached hereto as **Exhibit B**.

For the reasons previously set forth in Defendants' January 16, 2023 letter to the Court (ECF No. 279), Defendants object to the search terms proposed by Plaintiff:

> Plaintiff's proposed search terms are overbroad, disproportionate to the needs of the case, not reasonably calculated to locate admissible evidence, and, in some cases, entirely irrelevant. Nearly all of Plaintiff's proposed search terms returned thousands of hits, most of which are likely unrelated to this matter. Moreover, in several instances, Plaintiff has proposed searching emails and attachments for single words (such as "Kairam" or "unit"), without appropriate connectors to ensure that large amounts of non-responsive items are not captured. For other searches, Plaintiff proposed searching for all emails between certain individuals without any specific search terms. Plaintiff's proposed searches are not an effective means of sifting through the incredibly large quantity of data collected by Defendants, nor is the massive undertaking required to review 221,504 e-mails proportional to the needs of the case.[2]

---

[1] Defendants attach the reports of the most recent search terms proposed by each side, which have undergone revisions throughout the negotiations.

[2] Following Defendants' January 16, 2023 letter, Plaintiff agreed to modify some of her search terms, reducing the total number of responsive items from 221,504 to 186,276. For the reasons explained below, we submit that this modification is not sufficient and does not evince any real intent to cooperate with Defendants to negotiate appropriate search terms.

2

*See* ECF No. 279. In addition to these general objections, however, Defendants assert the following specific objections:

**Search Term 1: "Kairam"**

This search term, which notably does not contain any connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence as it would capture any communications in which Plaintiff is mentioned, without regard to whether or not those communications have any connection to the allegations or Defendants' defenses, including, for example, communications related to the day-to-day operations of WSGI and personnel matters unrelated to the allegations in the SACC. Indeed, the "Kairam" search term returned a staggering 15,913 responsive documents. *See* Exhibit A. Notably, this number does *not* account for a search of additional email that Plaintiff has requested be collected (for example, the emails of non-Board members). Thus, this search term goes well beyond what Defendants can reasonably be expected to review in connection with this matter – an action filed by a single plaintiff and not asserting any class claims.

Notably, Defendants have proposed no fewer than 20 search terms containing Dr. Kairam's name and one or more search term connectors that relate to the subject matters raised in the SACC. *See* Exhibit B. These search terms (for example, "Kairam w/15 'subscription agreement' or MSA") are appropriately tailored and designed to locate relevant documents and information, in contrast to the singular, overly broad search term proposed by Plaintiff.

**Search Term 2: "Goldberg"**

This search term is objectionable for the same reasons that Search Term 1 is objectionable, namely, it is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, this search term returned 22,102 hits. *See* Exhibit A.[3]

As an appropriate alternative to this search term, Defendants have proposed three (3) search terms designed to capture relevant items related to Dr. Goldberg and Plaintiff's claim of age discrimination:

- Goldberg w/5 retir! (443 hits)
- Goldberg w/5 performance (17 hits)
- Kairam OR Goldberg w/10 "Adenoma detection rate" OR ADR[4] (68 hits)

**Search Term 3: "Gould"**

This search term is objectionable for the same reasons that Search Term 1 is objectionable. Additionally, this search term returned 17,996 hits. Defendants should not be made to review every

---

[3] In this context, the term "hit" refers to the total number of individual documents resulting after deduplication.
[4] This search term initially contained the name "Gould" rather than "Goldberg." We have now corrected the error and agree to search for items responsive to the revised search term. In addition, we recently ran the revised search, which produced 68 hits.

3

item that may happen to contain the term "Gould," particularly when that term is likely to appear in many communications bearing absolutely no relationship to the present action.

We submit that this search term provides a very good example of Plaintiff's unwillingness to propose reasonable search terms and make a good-faith effort to reach consensus with Defendants. Plaintiff must surely realize that not every document referencing the Gould practice is relevant to the claims asserted in this action, and yet she insists that Defendants search for, review, redact, and produce these items nonetheless. This sort of wide-reaching review clearly is not required under the Federal Rules.

As an alternative to Plaintiff's improper search terms, Defendants have offered three (3) appropriately tailored search terms:

- Kairam w/5 Gould (758 hits)
- Distler w/10 "Gould practice" (579 hits)
- "Gould practice" w/5 WSGI (603 hits)

**Search Term 4: "Distler"**

This search term is objectionable for the same reasons that Search Term 1 is objectionable. This search term returned 22,193 hits.

As an alternative, Defendants have proposed the following search terms, which, again, are designed to capture relevant documents:

- Distler w/10 "Gould practice" (579 hits)
- "Gould practice" w/5 WSGI (603 hits)

These search terms are directly relevant to Plaintiff's allegation that "Dr. Distler supervised the assignment of cases from the Gould Practice to WSGI doctors, . . . but he refused to allow the staff to assign any cases to Dr. Kairam." SACC ¶ 124. We also note that Dr. Distler is one of many custodians identified by Defendants, and his emails have already been collected for review.

**Search Term 5: "[R]etir!"**

This search term, which notably does not contain any connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence. It will also capture many items that are not at all relevant to the claims asserted herein, including any item in which retirement happens to be referenced, notwithstanding lack of any connection to the allegations in the complaint. Similar to the search terms above, it returned 20,724 hits.

As an appropriate alternative, Defendants have proposed five search terms:

- Kairam w/10 "Retirement plan" w/5 premiums or earnings (56 hits)
- Retir! OR evaluation OR review w/10 age OR 70 (3,382 hits)
- Retir! w/3 mandatory OR require! OR compulsory (1,008 hits)

4

- Kairam w/5 retir! (211 hits)
- Goldberg w/5 retir! (443 hits)

### Search Term 6: "[U]nit or units or share or shares or syndi!"[5]

This search term, which notably does not contain appropriate connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. It therefore returned 101,642 hits. This figure cannot be justified. Indeed, upon review of a sampling of approximately 200 documents in the search results, the sampling did not contain a single document that was responsive to any discovery requests or relevant to the action; it contained, for example, emails or attachments referring to the number of "units" in a drug, or those in which "share" was used as a verb rather than a noun).

As an alternative, we have proposed the following search terms, which we submit are reasonable and appropriately tailored:

- Fowler w/20 Kairam w/20 negotiat! OR interest OR unit! (115 hits)
- Allocat! w/3 interest! OR unit! OR share! (934 hits)
- Transfer! OR Sell! OR Buy! OR Purchas! w/3 interest! OR unit! OR share! w/5 WSGI (918 hits)
- Kairam w/15 unit OR units OR interest (734 hits)[6]

Notably, Plaintiff has been unable to articulate why these search terms are not acceptable to her. However, per the Court's recommendation, Defendants recently ran the following search terms, which contain a "within 12" connector:

- Allocat! w/12 interest! OR unit! OR share! (1,306 hits)
- Price! w/12 interest! OR unit! OR share! (6,621 hits)
- Portion w/12 interest! OR unit! OR share! (2,119 hits)
- Value w/12 interest! OR unit! OR share! (4,480 hits)

Unfortunately, these search terms proved to be still too broad, returning a total of 14,526 hits. A related search term proposed by Plaintiff's counsel ("Syndi! w/12 interest! OR unit! OR share!") returned no hits. A copy of the report of these modified searches is attached as **Exhibit C**.

### Search Term 7: "[V]aluat! or 'market value' or fmv"

Again, this search term does not contain appropriate connectors and is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible

---

[5] In its original iteration, this search term included the term "subscription" (e.g., "unit or units or share or shares or syndi! or subscription").

[6] Defendants initially proposed additional search terms (including Price! w/3 interest! OR unit! OR share!, as well as Portion w/3 interest! OR unit! OR share!). However, these search terms produced a high hit count. In addition, based upon our prior sampling of 200 emails, we believe these search terms are likely to capture a high number of irrelevant items.

evidence. Like the search terms mentioned above, it will also capture many items that are not at all relevant to the claims asserted herein. Indeed, the hit count for this search term is 7,960 hits.

We have proposed the following search terms as an alternative:

- Valuation w/5 WSGI (856 hits)
- Valuation w/5 method (164 hits)

In addition, as the Court is aware, Defendants have already been directed to produce documents responsive to the following search term: "King w/10 valuation." Under these circumstances, Plaintiff's proposed search terms clearly are unnecessary.

**Search Term 8: "[V]alue w/s (unit or units or share or shares or syndi! or subscription)"**

This search term is duplicative of Search Term 6 and is objectionable for the same reasons mentioned above, namely, it is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. This search term returned 4,415 hits.

As explained above in connection with Search Term 6, Defendants have proposed a number of reasonable alternatives:

- Fowler w/20 Kairam w/20 negotiat! OR interest OR unit! (115 hits)
- Allocat! w/3 interest! OR unit! OR share! (934 hits)
- Transfer! OR Sell! OR Buy! OR Purchas! w/3 interest! OR unit! OR share! w/5 WSGI (918 hits)
- Kairam w/15 unit OR units OR interest (734 hits)

**Search Term 9: "[T]o/from/cc/bcc among all the people who participated in the valuation(s) (Plaintiff does not yet know the names of all the participants)"**

Like the search terms above, this search term is also overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, this search term does not contain any search terms or connectors, and would instead require Defendants to search for *all* emails between certain individuals, without regard to the subject matter of the email.

As explained above in connection with Search Term 7, Defendants have proposed various alternative search terms. Moreover, as the Court is aware, Defendants have already been directed to produce documents responsive to the following search term: "King w/10 valuation." Thus, again, Plaintiff's proposed search terms are unnecessary.

**Search Term 10: "[A]ny communication among (to/from/cc/bcc) 2 or more of Distler, Pou, Kairam, Fowler, Schifman, Henick and date (between 2012 and 2015)"**

As with Search Term 9, this search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. This search term also does not contain any search terms or connectors, and would instead require Defendants to search for all emails between certain individuals, without regard to the subject matter of the email. Given its wide scope, this search term returned 16,251 hits – a figure wholly out of proportion to the needs of this case and one which clearly encompasses irrelevant email communications. Plaintiff does not even bother to try to articulate why she considers this search to be reasonable.

By contrast, Defendants have proposed several reasonable alternatives, including 20 search terms that contain Dr. Kairam's name, one search term containing Dr. Distler's name, one search term containing Jordan Fowler's name, and various search terms related to Plaintiff's allegations against Dr. Pou and Frontier Healthcare/Physicians Endoscopy (the entities for which Fowler, Schifman, and Henick worked).

Accordingly, Defendants again submit that their search terms are appropriate, and that Plaintiff's vaguely defined, nonspecific search term should not be ordered by the Court.

**Search Term 11: "[A]ny communication among (to/from/cc/bcc) 2 or more of Goldberg, Goldberg's counsel by name and firm name and any other agent or representative of Goldberg and any WSGI member, personnel or counsel"**

This search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Like Search Terms 9 and 10, this search term also does not contain any search terms or connectors, and would instead require Defendants to search for all emails between certain individuals.

Moreover, as written this search term clearly encompasses communications not in Defendants' possession (e.g., communications between Goldberg and his counsel/agents and communications between Goldberg's counsel and WSGI's general counsel). It also encompasses communications likely to be protected as attorney-client communications or attorney work product (e.g., communications between Goldberg and his counsel). In addition, the phrase "agent or representative of Goldberg" is vague and susceptible to multiple and varying meanings.

Aside from this, Defendants have already proposed appropriately tailored search terms that capture the sorts of documents that Plaintiff appears to seek. For example, Defendants have proposed the following terms:

- Goldberg w/5 retir! (443 hits)
- Goldberg w/5 performance (17 hits)
- Kairam OR Goldberg w/10 "Adenoma detection rate" OR ADR (68 hits)

7

These search terms are an appropriate alternative to Plaintiff's proposed search term, which indeed is not even a search term. Moreover, we note that, pursuant to the Court's Order, Defendants previously provided Plaintiff with a service address for Dr. Goldberg's counsel, so that she may subpoena records from such counsel, if she chooses.

### Search Term 12: "PE or P w/1 E or physician! w/5 endoscopy"

This search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, it is inconceivable that every single document referencing Physicians Endoscopy ("PE") would be relevant to this action, particularly given that PE handled a variety of matters for WSGI, including, for example, IT issues bearing no relationship to this case whatsoever. Thus, Plaintiff's proposed search term returned 25,493 hits, which again is a staggering number of emails and attachments, and one which cannot be justified by the needs of this case.

Moreover, it is entirely unclear how Plaintiff's proposed search term is relevant to the allegations in the SACC, which notably does not include a single reference to Physicians Endoscopy.

### Search Term 13: "[K]ickback or AKS"

This search term, which notably does not contain appropriate connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. It therefore returned 2,512 hits.

Moreover, and significantly, Plaintiff does not allege that Defendants violated the Anti-Kickback Statute ("AKS") with respect to Kairam – only that they allegedly misrepresented whether the transaction with Dr. Kairam would fall into the Safe Harbor to the AKS. Thus, it is not clear how Plaintiff's proposed search term is relevant to the claims asserted in this action, and Plaintiff appears to merely be interested in engaging in a fishing expedition for potential violations of law.

Nevertheless, in the spirit of cooperation, Defendants have proposed several reasonable alternatives to Plaintiff's proposed search term:

- Kairam w/10"Anti-Kickback Statute" OR AKS (62 hits)
- Void w/3 "Safe Harbor" OR "Anti-Kickback Statute" OR AKS (64 hits)
- Compl! w/3 "Safe Harbor" OR "Anti-Kickback Statute" OR AKS (363 hits)

To the extent any relevant documents exist, they will likely be captured by the above proposed search terms.

8

### Search Term 14: "[S]afe w/s harbor"

As with Search Term 14, this search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. It therefore returned 2,022 hits.

Notably, Plaintiff's proposed search term appears to ignore the fact that "safe harbor" is a term of art, such that the words "safe" and "harbor" would never appear separately from one another in a sentence and hold the same meaning.

As a reasonable alternative to Plaintiff's proposed search term, Defendant have proposed the following terms designed to capture relevant items:

- Kairam w/10"Anti-Kickback Statute" OR AKS (62 hits)
- Void w/3 "Safe Harbor" OR "Anti-Kickback Statute" OR AKS (64 hits)
- Compl! w/3 "Safe Harbor" OR "Anti-Kickback Statute" OR AKS (363 hits)

As with all of Defendants' proposals, Plaintiff has not articulated why she believes they are inadequate – presumably, because they are not and Plaintiff is merely interested in casting as broad a net as possible, without any consideration for the scope of discovery permitted under the Federal Rules, nor any consideration for the undue burden imposed on Defendants, the primary custodian of documents.

### Search Term 15: "[C]apital and (contribution or investment or account)"

Again, this search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, this search term returned 12,785 hits, reflecting the fact that many of the items captured by this search term likely bear no relationship whatsoever to either Dr. Kairam or the allegations asserted in connection with this action.

As an alternative to an overly broad and ultimately ineffective search term, Defendants proposed the following search term:

- Kairam w/10 "safe harbor" w/5 "Capital investment" or "capital contribution"

As this search term did not ultimately produce any responsive hits, Defendants would be willing to expand the connector, for example, to "within 15." In any case, however, Defendants should not be required to search generally for "capital account" or other similar terms that are not reasonably tied to the allegations in the complaint.

### Search Term 16: "Adenoma detection rate or ADR"

This search term, which notably does not contain appropriate connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, the concept of adenoma detection rates is one that is familiar to doctors specializing in

9

gastroenterology, and it likely would have been discussed by Defendants outside the context of Plaintiff's allegations. Indeed, Plaintiff's proposed search term returned an excessive 2,209 hits.

As an alternative to such a broad search, Defendants have proposed the following search term, which we submit is sufficient to capture relevant items:

- Kairam OR Goldberg w/10 "Adenoma detection rate" OR ADR[7] (68 hits)

Again, Plaintiff cannot articulate why this search is inadequate. To the extent that argues the connector should be expanded, she fails to meaningfully explain why this is needed.

### Search Term 17: "Billing w/s (commit! or comit!) and date (between 2016 and 2020)"

This search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, there are likely many emails and attachments that reference the billing committee but are not relevant to the allegations in the complaint. The hit count for Plaintiff's proposed search term is therefore 917 hits. Defendants should not be required to sift through these many documents to locate items not likely to concern Dr. Kairam or her allegations. In addition, the proposed timeframe for the search is also objectionable, insofar as extends into 2020, well after this action was filed.

Again, Defendants have proposed reasonable alternatives:

- Kairam w/10 "Billing committee" (107 hits)
- Kairam w/10 billing OR "revenue cycle management" OR RCM (345 hits)

These search terms were effective in narrowing the scope of potentially responsive documents, thus increasing the likelihood that Defendants will be able to locate and produce relevant documents without unnecessarily increasing the burden to Defendants.

### Search Term 18: "Pension and (name of the different pension plan providers) and date (after September 2014)"

This search term is clearly overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, it is likely the case that many WSGI emails and attachments reference WSGI's pension plan, whether generally or in connection with the various doctors employed by WSGI. It is highly unlikely, however, that all, or even most, of these items are relevant to this action. Moreover, Plaintiff should not be permitted free rein to review every document that may happen to reference a pension plan in hopes of discovering some violation. This is simply not how discovery works.

---

[7] As mentioned in footnote 4, this search term initially contained the name "Gould" rather than "Goldberg." We have now corrected the error and agree to search for items responsive to the revised search term.

Moreover, again, Defendants have proposed perfectly reasonable alternatives that Plaintiff has not meaningfully challenged:

- Kairam w/10 "Retirement plan" w/5 premiums or earnings (56 hits)
- Kairam w/5 retir! (211 hits)

### Search Term 19: "ASC or Department of Health or DOH"

Like all of the search terms discussed above, this search term does not contain appropriate connectors and is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. It therefore returned an excessive 34,294 hits.

During the parties' meet and confer on February 3, 2023, Plaintiff's counsel acknowledged that the search term was overly broad, but failed to offer any workable alternative. Defendants, by contrast, have proposed the following search term, which again is appropriately tailored to the facts of the case:

- Approv! w/5 ASC or ambulatory w/5 "Department of Health" or DOH (10 hits)

### Search Term 20: "EEOC or discrim!"

This search term, which again does not contain appropriate connectors, is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Indeed, as written, the search term encompasses any email or attachment in which the EEOC or discrimination is mentioned, including, presumably, training documents and general statements concerning WSGI's policy. Significantly, the proposed search term also would capture items related to any form of discrimination, regardless of whether those forms of discrimination are asserted in this action (e.g., race or religious discrimination). This clearly is overreaching on Plaintiff's part, and as a result, her proposed search term returned 8,334 hits.

This search term perfectly illustrates Plaintiff's overzealous attempts to engage in a fishing expedition rather than make good-faith efforts to locate relevant documents.

As an alternative to Plaintiff's search term, Defendants have proposed several reasonable alternatives relating to the specific allegations in the complaint rather than the amorphous wrongdoing that Plaintiff hopes to uncover (for example, "Retir! OR evaluation OR review w/10 age OR 70"). Moreover, as the Court is aware, Defendants have already been ordered to produce documents related to Dr. Goldberg's allegations of age discrimination and any woman's allegations of sex discrimination. Accordingly, it is unclear what purpose Plaintiff's search term would serve.

**Search Term 21: "([A]ge or sex or gender or race or religion) w/25 (claim or suit or sued or court or EEOC or lawyer! or attorne! or [name of lawyers handling WSGI employment matters]"**

This search term is objectionable for the same reasons that Search Term 20 is objectionable, namely, it is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. Moreover, like Search Term 20, it returned an excessive number of hits: 2,891. Unlike Search Term 20, however, this search term expressly seeks items related to forms of discrimination that are *not* asserted in this action. In doing so, this search term lays bare Plaintiff's efforts to engage in a fishing expedition. Plaintiff simply cannot justify her request for documents related to religious discrimination, for example, because there are no such allegations in this case, and even if Plaintiff were to discover that WSGI had previously engaged in religious discrimination, that hypothetical discovery would have absolutely no effect on the outcome of this case.

This search term is so egregiously broad in scope as to raise the question of whether Plaintiff's search terms are merely intended to harass and overburden Defendants.

As explained above, Defendants have proposed several reasonable alternatives and have already been ordered to produce documents related to age discrimination and sex discrimination. Thus, Plaintiff's search terms are not necessary.

**Search Term 22: "WSGI II"**

This search term also does not contain appropriate connectors and is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. As a result, it returned 1,463 hits.

In addition, it is unclear what type of documents are sought by Plaintiffs, and similarly unclear how those documents are at relevant to the present action. To the extent that Plaintiff seeks documents concerning related federal actions filed by Dr. Kairam, we note that Plaintiff is likely to already be in possession of at least some of the documents that she seeks, and that, to the extent Plaintiff seeks documents that were exchanged between WSGI and its counsel, such items are likely protected as attorney-client communications or attorney work product.

**Search Term 23: "Documents to/from/cc/bcc prospective WSGI member and WSGI documents referencing those names (with the date up to six months after joining WSGI for those who did join)"**

As with Search Terms 9 and 10, this search term is overly broad, disproportionate to the needs of the case, and not reasonably calculated to locate admissible evidence, and will capture many items that are not at all relevant to the claims asserted herein. This search term also does not contain any search terms or connectors, and would instead require Defendants to search for all emails between certain individuals. To the extent that the search term seeks documents between WSGI's general counsel and third parties, the search term also seeks items not in Defendants'

possession. Moreover, and significantly, Defendants have already proposed various search terms likely to capture the types of items that Plaintiff appears to seek, for example:

- Allocat! w/3 interest! OR unit! OR share! (934 hits)
- Transfer! OR Sell! OR Buy! OR Purchas! w/3 interest! OR unit! OR share! w/5 WSGI (918 hits)

For all of these reasons, Defendants respectfully submit that Plaintiff's proposed search terms are not at all appropriately tailored and should not be ordered by the Court. By contrast, Defendants' proposed search terms were designed to capture relevant documents and communications without unnecessarily expanding the scope of discovery beyond what is permitted or envisioned under the Federal Rules. Indeed, in addition to Defendants' search terms discussed above, Defendants also proposed several other search terms, which Plaintiff does not appear to challenge, including:

- Kairam w/10 part-time w/3 job OR employment OR work OR duties (53 unites)
- Kairam w/10 Administrative w/3 work OR duties (123 hits)
- Kairam w/3 salary OR pay (315 hits)
- Kairam w/5 $100,000 (68 hits)
- Kairam w/3 credit (23 hits)
- Kairam w/15 "subscription agreement" or MSA (278 hits)
- Kairam w/10 "transition period" (175 hits)

### **OPPOSING COUNSEL'S MISREPRESENTATIONS TO THE COURT**

Finally, Defendants seek to correct numerous misrepresentations that Plaintiff's counsel made to the Court in her last submission. As the Court is aware, on January 31, 2023, the Court issued an Order directing Defendants to take various actions related to the parties' discovery disputes, including, for example, disclosing the names of relevant parties (*see* ECF No. 291). On February 7, 2023, Defendants filed a letter in compliance with the Court's January 31, 2023 Order (*see* ECF No. 292). Shortly thereafter, Plaintiff's counsel filed a response to Defendant's letter (ECF No. 293), containing no fewer than five misrepresentations to the Court.

That following day, February 8, 2023, upon review of opposing counsel's letter, Defendants immediately contacted Plaintiff's counsel, requesting that she correct her misrepresentations to the Court. A copy of Defendants' email to opposing counsel is attached hereto as **Exhibit D**. Defendants' email also set forth, in detail, the various misrepresentations made by opposing counsel:

> You state that "Defendants again failed to provide anyone with authority to negotiate anything, including search terms, with Plaintiff." As you are well aware, Defendants' counsel have never refused to negotiate with Plaintiffs – we have merely requested additional time to confer with one another before agreeing to your

13

proposals. This is not an uncommon practice and your suggestion to the contrary is frankly bewildering.

You state that "I contacted Mr. Thomas repeatedly last week – sending e-mails and leaving a voicemail." As I indicated to you last week, I do not have *any* record of missed calls or voicemail messages. <u>Please advise of the date and time when you allege you called.</u> Moreover, you stated that you sent multiple "emails" when there is only one email from you (on February 2, 2023 at 2:04 PM), which I immediately responded to, offering to set up a phone call.[8]

Significantly, you state that "Defendants Still Refuse to Run Searches – Including Searches the Court Proposed – to See Whether the Hit Counts Make Sense." This is categorically false. Indeed, Defendants advised both you and the Court that "although Defendants have not yet agreed to produce documents resulting from [Plaintiff's] newly proposed searches, Defendants will agree to run those searches to determine the hit count of the proposed searches and, if appropriate, to propose alternative searches." *See* ECF No. 292. You were aware that this was Defendants' position, as you acknowledged reviewing Defendants' letter in your own February 7, 2023 submission. *See* ECF No. 293. Nevertheless, you represented to the Court that Defendants had taken a position other than the one you knew they had taken.

You state that "Mr. Thomas also stated that he did not believe he needed to confer with me about search terms and that he was only doing so as a courtesy." This, again, is categorically false. If I did not believe I needed to confer with you, why would I make myself available for one hour to exclusively discuss search terms? What I communicated to you – as you are no doubt aware – is that the meet and confer could have taken place later (for example, on Monday, February 6), but that given your preference for meeting sooner, I would meet with you on Friday, February 3, notwithstanding that Jeff and Lindsey could not attend. Your effort to misconstrue my statement is troubling and calls into question your ability to have a cooperative relationship with opposing counsel.

Finally, you state that "During the call on Friday, Mr. Thomas' only negotiating position was an ultimatum that Plaintiff could accept Defendants' narrow searches." This too is false. I repeatedly stated

---

[8] Please note that, upon further investigation into this issue, Defendants' counsel, Mr. Thomas, learned that opposing counsel had left him a voicemail message on or about February 1, 2023, as she had previously advised. However, contrary to the representation in her February 7, 2023 letter to the Court, opposing counsel indicated in her voicemail that she was calling to request that Defendants order a copy of a transcript – not to discuss search terms. More significantly, opposing counsel's other statements in her February 7, 2023 letter (discussed at length in Defendant's February 8, 2023 email) continue to be knowingly false.

14

>that Defendants believed their search terms were appropriate but that we are willing to continue to discuss Plaintiff's proposed search terms and reach agreement where possible.

Despite notice of Defendants' intention to bring this matter before the Court, multiple days after Defendants' email was sent, Plaintiff's counsel has not *at all* responded to Defendant's communication, nor has she made *any* effort to correct her misrepresentations to the Court. This is particularly notable in light of the frequency with which Plaintiff's counsel communicates with Defendants via email.

In their letter to Plaintiff's counsel, Defendants further explained that:

>[Opposing counsel's conduct] continues a troubling pattern in which you appear to willfully misrepresent facts to the Court in order obtain advantage for your client. Recently, you falsely represented to the Court that Defendants had "destroyed" communications by Ms. Abdin, without any basis to do so. *See* ECF No. 289 at 2 ("Plaintiff's false accusation that Defendants 'destroyed documents' is particularly objectionable, as it was made without the good-faith basis required when making representations to the Court."). Similarly, you have previously made misrepresentations to the Court regarding statements allegedly made to you by Defendants' counsel. *See, e.g.*, ECF No. 274 ("While Defendants advised that they would respond to Plaintiff's proposal, Defendants did not agree to respond by this week. It appears that Plaintiff has made this misrepresentation as an excuse to file another frivolous letter with the court this Friday claiming that Defendants 'failed' to respond to her proposal.").

Opposing counsel's misrepresentations in this instance are particularly egregious, as they appear to have been the impetus for the Court's February 8, 2023 Order directing Defendants to, within two days, "show cause" why the Court should not direct Defendants to utilize the search terms proposed by Plaintiff, and take various other actions. Thus, unlike prior instances in which Plaintiff's counsel has played fast and loose with the truth, here, her misrepresentations appear to have compelled the Court to take adverse action against WSGI, resulting in direct prejudice to Defendants.

This sort of misconduct by Plaintiff's counsel must not be ignored by the Court, and given opposing counsel's prior conduct in this action, we have every reason to believe that it will continue if left unchecked. Accordingly, we respectfully request that the Court direct Ms. Shieldkret to file a letter responding to the matters raised in Defendant's email, and respectfully reserve the right to seek sanctions against Ms. Shieldkret pursuant to Rule 11.

Thank you for your consideration of this matter.

>Respectfully submitted,
>
>GORDON REES SCULLY
>MANSUKHANI, LLP
>
>/s/
>Ryan Sestack, Esq.
>Jeffrey Camhi, Esq.
>Lindsey Blackwell, Esq.
>Copatrick Thomas, Esq.

cc: Attorneys of Record (via ECF)